UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER SWANSON,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO., INC.,<br><br>Defendant. | Case No. 21-cv-05595<br>Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

Defendant Southwest Airlines moves to compel arbitration in this retaliatory discharge case. [20].[1] For the reasons set forth below, the court grants Southwest's motion. This case is hereby stayed pending the outcome of the arbitration.

**FACTUAL BACKGROUND**

The court accepts Swanson's recitation of the facts in her complaint for the purpose of deciding this motion. Southwest hired Heather Swanson to be a ramp employee at Chicago's Midway airport in April 2014. [1-1] ¶ 3. Southwest promoted her to ramp supervisor later that year. *Id.* ¶ 4. Swanson suffered a head injury on the job in 2014. *Id.* ¶ 5. She filed an application for adjustment of claim about 18 months after the injury, *id.*, but she reported it to her supervisor immediately, *id.* ¶ 6. Two years later, in July 2016, Swanson suffered another injury at work, sustaining damage to her hip, back, neck, and right leg. *Id.* ¶¶ 7–8. She again reported her injury immediately and she filed an application for adjustment of claim two months later. *Id.*

Swanson saw many doctors for her injuries. *Id.* ¶¶ 9–15. Her own doctors concluded that her injuries were too severe to permit her to return to work; Southwest's doctor concluded the opposite. *Compare id.* ¶¶ 9–13, 15, *with id.* ¶ 14. Swanson returned to work in October 2016 consistent with Southwest's doctor's assessment. *Id.* ¶ 16. Her supervisors promised that they would put her on light duty given her recent injuries. *Id.* ¶ 19. But Swanson "was taken off her light duty position and put out on the ramp at full duty." *Id.* She reinjured herself in that attempt, *id.*, and her primary care physician took her off work and filled out

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph numbers. Page numbers refer to the CM/ECF page number.

paperwork to allow her to take a leave of absence, *id.* ¶ 21. Southwest's workers' compensation insurance carrier denied her claims the next day and ordered her back to work. *Id.* ¶ 22. The complaint is not clear on Swanson's work status for the next two months, but seemingly, she was only doing light work despite Southwest's position that she should have been on full duty. *See id.* ¶¶ 23–25. Southwest terminated Swanson's employment on December 10, 2016, alleging that she violated her light work restrictions by carrying her grandmother's groceries. *Id.* ¶ 26. Swanson received significant medical treatment related to these injuries over the next two years. *Id.* ¶¶ 27–32.

## PROCEDURAL HISTORY

Swanson sued Southwest Airlines in the Circuit Court of Cook County alleging that Southwest discharged her as retaliation for exercising her rights under the Illinois Workers' Compensation Act. *Id.* ¶ 37. Southwest removed the case to this court. [1]. In answering the complaint, Southwest asserted five affirmative defenses: (1) Swanson failed to mitigate damages; (2) Swanson's claim for punitive damages was barred because Southwest's conduct was not willful; (3) Southwest was not liable for injuries or damages caused by Swanson's preexisting conditions; (4) Swanson's claims were barred by the statute of limitations; and (5) Swanson's claims were barred by "laches, waiver, estoppel, and/or unclean hands." [11] at 14–15.

Nearly eight months after Swanson filed her complaint in state court and nearly six months after the court referred the case to Judge Cummings for discovery, Southwest asserted for the first time that Swanson's claim was subject to a mandatory arbitration provision in her employment contract. [20]. Southwest moved to compel arbitration under the Federal Arbitration Act ("the FAA") and the Texas Arbitration Act ("the TAA"), and it moved to stay this case pending the outcome of the arbitration. *Id.* at 1. Swanson responded that Southwest had waived mandatory arbitration by not asserting it as an affirmative defense or disclosing it during certain aspects of the discovery process that had gotten underway by that point. [26] at 1–2.

After Southwest filed its motion, the Supreme Court decided two cases that directly impact this one. First, in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), the Court held that the FAA's supposed "policy favoring arbitration" did not permit the federal courts to craft a prejudice requirement when determining whether a party waived mandatory arbitration as a defense to a suit. *Id.* at 1711; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Second, in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022), the Court held that Southwest's ramp supervisors belong to a "class of workers engaged in foreign or

interstate commerce" and are thus exempt from the FAA's coverage. *Id.* at 1787. Swanson was a ramp supervisor for Southwest. [1-1] ¶ 4.

The combination of these cases shifted the legal sands on which the parties' arguments rest. First, Swanson was exempt from the FAA because she was a ramp supervisor.[2] *Saxon*, 142 S. Ct. at 1787. Thus, the law governing the arbitration clause became state law, not the FAA. *Cf. Saxon v. Southwest Airlines Co.*, 993 F.3d 492, 502 (7th Cir. 2021), *aff'd, Saxon*, 142 S. Ct. 1783. Second, the standard for determining whether Southwest waived mandatory arbitration possibly changed due to *Morgan*. Southwest removed this case pursuant to the court's diversity jurisdiction. [1] ¶ 4. And now that the issue in the motion is a question of state law rather than the FAA, the court is bound to follow the substantive law of the forum state (Illinois) and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("federal courts are to apply state substantive law and federal procedural law"). If the elements of waiver are procedural, the rule announced in *Morgan* governs this motion: "a federal court assessing waiver does not generally ask about prejudice." 142 S. Ct. at 1713. Waiver is simply "the intentional relinquishment or abandonment of a known right." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

But state law points the court in a different direction. Illinois's choice-of-law rules (which the court is bound to follow as it sits in diversity, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)), require the court to respect the choice-of-law provision in Swanson's employment contract so long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy. *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). The contract's choice-of-law clause selects Texas as an alternative to the FAA. [20-2] at 5. Like nine federal courts of appeals prior to *Morgan*, the Texas Supreme Court requires a showing of prejudice before a court can hold that a party waived mandatory arbitration. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 & n.36 (Tex. 2008). So if the elements of waiver are substantive for *Erie* purposes, Swanson would be required to show that Southwest "substantially invok[ed] the judicial process to [her] detriment or prejudice." *Id.* at 589–90.

---

[2] Southwest preserves in a footnote that Swanson's job duties differed from those of the *Saxon* plaintiff (as the Supreme Court assumed they existed) such that Swanson was not exempt from the FAA. [27] at 2 n.1. At this stage of the case and for the purpose of resolving this motion, the court concludes that Swanson's duties included "step[ping] in to load and unload cargo alongside ramp agents." *Saxon*, 142 S. Ct. at 1787; *see* [20-4] ¶ 8 (declaration stating that ramp supervisors can "assist" ramp agents—whose jobs actually included loading and unloading cargo—"in a management capacity"); *see also* [27] at 2 (agreeing that the court need not resolve the fact question of Swanson's duties).

3

Because the parties understandably did not address this *Erie* issue in their first round of briefing, the court ordered supplemental briefing on whether the elements of waiver are substantive or procedural and whether Southwest waived mandatory arbitration in this case under either rule. [28].

## LEGAL STANDARD

On a motion to compel arbitration under Texas law, the moving party bears the initial burden to establish the arbitration agreement's existence and to show that the claims asserted against it fall within the arbitration agreement's scope. *In re Estate of Guerrero*, 465 S.W.3d 693, 699 (Tex. Ct. App. 2015). The movant must also show that the opposing party has refused to arbitrate. Tex. Civ. Prac. & Rem. Code § 171.021(a)(2). If the movant makes these showings, the nonmovant can contest the movant's proof or present its own evidence supporting the elements of a defense to enforcing the arbitration agreement. *Estate of Guerrero*, 465 S.W.3d at 700. If there are genuine disputes of material fact whether the agreement exists, the court cannot summarily grant or deny the motion and must resolve the disputed material facts. *Id.* Whether an arbitration agreement is enforceable is a question of law. *Id.*

## ANALYSIS

### I. The Arbitration Agreement

The arbitration agreement at issue here is contained in a document entitled "Southwest Airlines Dispute Resolution Program." [20-2] at 2. It provides that the ADR program "is intended to be a substitute for the legal process, and may only be invoked to resolve employment-related wage and hour claims/causes of action and claims under state or local leave laws." *Id.*

#### A. Valid Arbitration Agreement

The arbitration agreement is valid. "A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that (1) exists at the time of the agreement; or (2) arises between the parties after the date of the agreement." Tex. Civ. Prac. & Rem. Code § 171.001(a). "A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract." *Id.* § 171.001(b). The ADR program is in writing, [20-2], and Swanson accepted it on July 31, 2016, [20-2] ¶ 8. The dispute between the parties arose on December 10, 2016 when Southwest terminated Swanson' employment. [1-1] ¶ 26.

Swanson makes two arguments that the agreement is unenforceable: (1) that it is unconscionable and (2) that it is void as against public policy. [26] at 9–15.

*Unconscionability*. Swanson argues that the ADR program is substantively unconscionable. *Id.* "Substantive unconscionability refers to the fairness of the

4

arbitration provision itself[.]" *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex. Ct. App. 2013). Because unconscionability "lacks precise legal definition," Texas courts look to five factors to determine whether the substantive abuse is "sufficiently shocking or gross to compel the court to intercede[.]" *Id.* The five factors are:

> (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable.

*Id.*[3] Swanson has forfeited any argument that any of these factors shows substantive unconscionability. As Southwest points out, Swanson cites, attaches, and argues about an ADR policy to which she was never subject—the ADR policy at issue in the Supreme Court's *Saxon* case. [27] at 7 (citing [26-6] (district court documents from the *Saxon* case, 1:19-cv-00403)). For that reason alone, Swanson's argument that the ADR policy to which she agreed was unconscionable is forfeited. *See United States v. Hathaway*, 882 F.3d 638, 641 (7th Cir. 2018) ("Forfeiture is the accidental or *neglectful* failure to timely assert a right." (Emphasis added)).

Even assuming that Swanson is challenging the correct contract, she points to no decision of any Texas court holding a similar mandatory arbitration provision substantively unconscionable. Indeed, the Texas Supreme Court has upheld the validity of mandatory arbitration agreements in the face of substantive unconscionability challenges, even where the provision at issue was a condition of employment and a so-called "contract of adhesion" that was not the subject of any bargaining. *See, e.g.*, *In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002); *cf. In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007) ("Adhesion contracts are not automatically unconscionable, and there is nothing per se unconscionable about arbitration agreements." (Citation omitted)). Without any authority on which to base its reasoning, the court declines to make an "*Erie* guess" that the Illinois Supreme Court would find the standard arbitration agreement at issue here to be "sufficiently shocking or gross to compel the court to intercede[.]" *Delfingen US-Texas, L.P.*, 407 S.W.3d at 797.

*Void as against public policy.* Illinois, the forum state, will not enforce contracts that are against its fundamental public policy. *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1005 (Ill. App. Ct. 1994). Swanson argues that the entire ADR program is against Illinois public policy and no part of it can be

---

[3] The court assesses the fourth factor separately under Illinois law and then Texas law as Illinois also does not permit the enforcement of contracts that are against its fundamental public policy. *Fulcrum Fin. Partners*, 230 F.3d at 1011.

5

severed. [26] at 13–15. For this proposition, Swanson cites the Illinois Workplace Transparency Act. 820 ILCS 96/1-1 *et seq.* But Swanson's argument runs headlong into its own admissions. She concedes that the Act applies to "contract[s] executed, modified, or extended on or after January 1, 2020." [26] at 13; 820 ILCS 96/1-10(c). Swanson's contract terminated on December 10, 2016, more than three years before the Act's effective date. [26] at 4. Thus, the Workplace Transparency Act cannot serve as a basis to void the application of an otherwise valid provision of a contract. *See Nanberg v. 21st Century Flooring, LLC*, No. 21-cv-6623, 2022 WL 4482761, at *3 n.3 (N.D. Ill. Sept. 27, 2022) (holding the same).

Neither Swanson's original briefing nor her supplemental briefing provides any reason why the arbitration agreement is void as against Texas's public policy. Any argument on this point is forfeited. *See Scheidler v. Indiana*, 914 F.3d 535, 540 (7th Cir. 2019).

### B. The Claims Fall Within the Agreement to Arbitrate

Southwest has satisfied its burden to show that Swanson's claims fall within the scope of the agreement to arbitrate. The ADR program "applies to any covered claim . . . between Southwest Airlines . . . and an ADR Employee of Southwest Airlines . . . even after the employment relationship has ended." [20-2] at 2. Swanson alleges that Southwest terminated her in retaliation for exercising her rights under Illinois's Workers' Compensation Act. [1-1] ¶¶ 37, 40; *see* 820 ILCS 305/1 *et seq.* Southwest contends that Swanson's claim is covered under two clauses in the ADR program as: (a) a "retaliation claim[]" related to "other compensation" and (b) a "retaliation claim" related to "medical leave." [20] at 9–10 (citing [20-2] at 3)).

Swanson's responsive briefing, [26], does not argue that her claim is not covered by the arbitration agreement. Yet because the movant bears the burden on this point, *Estate of Guerrero*, 465 S.W.3d at 699, the court analyzes the issue without responsive briefing, *cf. Marcure v. Lynn*, 992 F.3d 625, 631–32 (7th Cir. 2021); *Nabozny v. Podlesny*, 92 F.3d 446, 459 n.9 (7th Cir. 1996).

Swanson's claim is covered because it is a "retaliation claim[] for having exercised or attempted to exercise rights under" an applicable law for "other compensation." [20-2] at 3. The Illinois Workers' Compensation Act provides for "compensation" when an employee sustains certain kinds of injuries on the job. *See* 820 ILCS 305/8 (setting out compensation schedule). Swanson claims that Southwest fired her in retaliation for attempting to exercise her rights under the statute. [1-1] ¶ 37. Thus, the ADR program's language covers her claim.

6

### C. Refusal to Arbitrate

Swanson refuses to arbitrate this claim. [26-4] at 1. Southwest has met its burden on this point.

*

Because Southwest has met its burden on each of the three necessary elements under Texas law, the court concludes that Swanson's claim is subject to the arbitration agreement contained in the ADR program. [20-2].

## II. Waiver

Swanson's primary argument against compelling arbitration is that Southwest has waived reliance on the arbitration clause through its conduct. [26] at 1–3, 5–9. Swanson makes two separate points. *First*, she claims that Southwest's litigation conduct constitutes waiver because it failed to raise mandatory arbitration as an affirmative defense, and it waited too long to assert its rights. *Id.* at 1–2. *Second*, she argues that Southwest waived mandatory arbitration by failing to follow its own procedures set out in the ADR program. *Id.* at 8–9.

Southwest responds that its conduct does not show that it waived its right to enforce the arbitration agreement and that Swanson was not prejudiced by Southwest's late assertion of mandatory arbitration. [20] at 12–13; [27] at 3–7; [30] at 6–7.

### A. Legal Landscape

Because of the novelty and complexity in this area, the court begins with some background on the relevant law. When courts assess whether a party has waived an argument or right, they ordinarily ask whether the party has intentionally relinquished or abandoned it. *Morgan*, 142 S. Ct. at 1713 (quoting *Olano*, 507 U.S. at 733). If a court finds that a party has waived reliance on a right or argument, the court will not consider it. *See United States v. Seals*, 813 F.3d 1038, 1045 (7th Cir. 2016).

Prior to the Supreme Court's decision in *Morgan*, a circuit split had developed over the proper test for determining whether a litigant had waived reliance on a mandatory arbitration agreement governed by the FAA. Nine circuits had created an arbitration-specific rule that nonmovants had to show they were prejudiced by a movant's failure to assert its right to arbitrate at some earlier point. *Morgan*, 142 S. Ct. at 1712 & n.1. Two circuits (including the Seventh Circuit) had rejected it. *Id.* at 1712 & n.2. *Morgan* resolved the split by holding that the FAA did not command an arbitration-specific rule. *Id.* at 1712. But it left open a host of other questions including the "the role state law might play" and whether waiver is even

7

the proper framework for considering whether a litigant asserted its right to mandatory arbitration too late to be considered. *Id.*

*Morgan* arose under the FAA. Because of the Court's holding in *Saxon*, 142 S. Ct. at 1787, the arbitration clause in Swanson's employment contract is now governed by state law. This case arises under the court's diversity jurisdiction, so under *Erie*, the court decides the case under the substantive law of the forum state (here Illinois) using federal procedural law. *Hanna*, 380 U.S. at 465. Illinois choice-of-law rules require the court to respect the choice-of-law provision in the employment contract, which, as discussed above, selects Texas. *See* Procedural History, *supra*. Texas courts assessing an alleged waiver of a right to mandatory arbitration ask slightly different questions than the inquiry posed by *Olano*. Instead of determining whether the party attempting to compel arbitration intentionally relinquished or abandoned a known right to arbitrate, they ask whether that party "substantially invoked the litigation process" and if so, whether "the opposing party proves that it suffered prejudice as a result." *Perry Homes*, 258 S.W.3d at 593 (citation omitted).

This background raises the question whether the elements that constitute waiver of a right to arbitrate based on state arbitration law are substantive or procedural under *Erie*.

### B. Waiver of a Right to Arbitrate Is Substantive

It is as true today as it was 58 years ago that "the cases following [*Erie*] have not succeeded in articulating a workable doctrine governing choice of law in diversity actions." *Hanna*, 380 U.S. at 474 (Harlan, J., concurring); *see* 19 Arthur R. Miller, *Federal Practice and Procedure* § 4511 (3d ed. 2022). *Erie* problems are particularly difficult where the matter in question falls "within the uncertain area between substance and procedure." 19 Wright & Miller, *supra* § 4511 (quoting *Hanna*, 380 U.S. at 472).

Because no Federal Rule of Civil Procedure governs waiver of contractual rights, the court applies the "relatively unguided" *Erie* analysis, which calls on the court "to determine whether the rules at issue or substantive or procedural." *In re County of Orange*, 784 F.3d 520, 527 (9th Cir. 2015); *see generally Houben v. Telular Corp.*, 309 F.3d 1028, 1030–36 (7th Cir. 2002) (background). Substantive rules are those that create rights or obligations or are so bound up with state-created rights and obligations that a federal court is required to apply them. *See Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525, 535 (1958). Procedural rules, by contrast, define "a form and mode of enforcing" a substantive right. *Id.* at 536. Because of the imprecision of these definitions, courts have turned to policy-rooted tests to guide the inquiry. One is the "outcome-determinative" test first announced in *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945). That test instructed courts to apply

the state rule where applying the federal rule would "significantly affect the result of a litigation." *Id.* at 109. *Hanna* added some nuance, reading the outcome-determinative test with reference to the "twin aims" of *Erie*: discouraging forum shopping and avoiding the inequitable administration of the law. 380 U.S. at 468; *see County of Orange*, 784 F.3d at 528 (calling the choice between state and federal law "more informed" by the policy tests than the labels of substance or procedure).

Utilizing this "unguided analysis," the court concludes that waiver of the right to compel arbitration in this case is substantive for *Erie* purposes. The Texas rule requiring substantial invocation of the litigation process and prejudice is "bound up with [Southwest's] rights and obligations in such a way that its application in the federal court is required." *Byrd*, 356 U.S. at 535.

Texas courts have referenced substantive policies when justifying Texas's two-prong waiver rule. In the main case on this issue—*Perry Homes v. Cull*—the Texas Supreme Court noted that the hurdle to showing that a party had waived arbitration was "a high one" "[d]ue to the strong presumption against waiver of arbitration." 258 S.W.3d at 589–90; *see also Kenny Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 543 (Tex. 2014) (per curiam). As one Texas appellate court put it, "[b]ecause public policy favors arbitration, there is a strong presumption against finding that a party has waived its right to arbitration; the burden to prove waiver is thus a heavy one." *Southwind Grp., Inc. v. Landwehr*, 188 S.W.3d 730, 735 (Tex. Ct. App. 2006). The Texas courts thus see the elements and test for waiving arbitration as tied to substantive rights of those asserting mandatory arbitration.

*Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118 (7th Cir. 1998), presents an analogous scenario where the court held that the state-law waiver rule governed. The plaintiff sued his former employer for breach of contract and violations of Indiana's wage payment statute. *Id.* at 1120. In part, the plaintiff alleged that his employer breached a contract by failing to pay his additional bonus in annual installments. *Id.* at 1122. The district court held that this oral promise was unenforceable due to Indiana's statute of frauds, despite the fact that the defendant had failed to raise this defense in its answer as required by Rule 8(c). *Id.* "By its silence," the Seventh Circuit explained, "Carrera had forfeited that defense under the principles of procedural waiver or forfeiture enforced in the federal courts." *Id.* Ordinarily, federal procedural rules (like the rule requiring the statute of frauds to be pled as an affirmative defense) govern federal litigation. *Id.* at 1123 (citing *Metfirst Fin. Co. v. Price*, 991 F.2d 414, 415 (7th Cir. 1993)).

In spite of the Federal Rule of Civil Procedure directly on point (an attribute the federal rule on waiver of arbitration does not possess), *Herremans* held that applying it would interfere with substantial state interests. *Id.* The court explained that this exception is "more likely to be applicable when the state waiver

9

rule is limited to some particular body of substantive law and is therefore more likely to reflect state substantive policies than is a procedural rule of general applicability." *Id.* In *Herremans*, application of the state waiver rule ended up working against the appellee because the state rule was stricter than the federal one. *Id.* The court chose to apply the state rule because it was "intended . . . to discourage breaches of contract and thus to advance substantive state policy." *Id.*

Applying *Herremans* here, the state rule is the correct selection. Unlike in *Herremans*, there is no Federal Rule of Civil Procedure directly on point. And applying the federal rule—which lacks a prejudice requirement—would interfere with Texas's stated policy favoring arbitration, which serves as one justification for the presumption against waiver and the strict two-prong test developed by Texas's courts in this context. *See Southwind Grp.*, 188 S.W.3d at 735. As in *Herremans*, this waiver rule is tied to a "particular body of substantive law" and is not "a procedural rule of general applicability." 157 F.3d at 1123. *Perry Homes* explains this well. The defendants in that case asked the Texas Supreme Court to reexamine the prejudice requirement it had developed because "Texas law does not require a showing of prejudice for waiver." 258 S.W.3d at 594. Indeed, the ordinary Texas waiver rule is the same as the federal rule announced in *Olano*: intentional relinquishment of a known right. *Id.* But the Texas Supreme Court declined to claw back the prejudice requirement, unlike the U.S. Supreme Court in *Morgan*. *Id.* The Texas Supreme Court recognized that waiver generally does not require a showing of prejudice, but borrowing from the law of estoppel, the court determined that waiver by litigation conduct involves the question of reliance, and thus upheld the prejudice requirement. *Id.* at 595. Thus, the Texas Supreme Court has treated this rule as an arbitration-specific rule, not one of general applicability.

Since the Supreme Court decided *Morgan*, fourteen Texas appellate courts have discussed *Morgan*'s applicability in state-court cases applying either the FAA or the TAA.[4] All fourteen have continued to apply a prejudice standard despite *Morgan* or have declined to address the issue.

---

[4] *E.g.*, *Mac Haik Chevrolet, Ltd. v. Parker*, No. 01-11-685-cv, 2023 WL 1786163, at *6 n.6 (Tex. Ct. App. Feb. 7, 2023) (declining to address); *Turnbull Legal Grp. PLLC v. Microsoft Corp.*, No. 01-20-00851-cv, 2022 WL 14980287, at *15 n.10 (Tex. Ct. App. Oct. 27, 2022) (declining to address); *Alarcon Constr. Grp. LLC v. Santoyo*, 05-21-00885-cv, 2022 WL 4923461, at *5–6 & n.3 (Oct. 4, 2022); *F.T. James Constr. Inc. v. Hotel Sancho Panza, LLC*, No. 08-20-00096-cv, 2022 WL 4538870, at *4–9 (Tex. Ct. App. Sept. 28, 2022); *Green v. Velocity Invs., LLC*, No. 05-20-00795-cv, 2022 WL 3655232, at *5–6 (Tex. Ct. App. Aug. 25, 2022); *see also id.* at *9 n.4 (Schenck, J., dissenting) ("Whether [*Morgan*] would govern in state court as a matter of procedure generally, or in cases said to be subject to state arbitration statutes, is unsettled and a matter for the Texas Supreme Court to determine in the first instance.").

Wright & Miller provides further guidance. While waivers of constitutional and other federal rights are generally assessed as a matter of federal law, waivers of nonfederal rights, arguments, and defenses are often assessed under state law (though there are some discrepancies). 19 Wright & Miller, *supra* § 4511.1 n.59 (collecting cases).[5]

Texas's two-prong waiver rule is "bound up with [Southwest's] rights and obligations in such a way that its application in the federal court is required." *Byrd*, 356 U.S. at 535. Thus, the court treats the test for waiver of mandatory arbitration as substantive and applies the state rule in this case.[6]

\*

Though not clearly explained, Swanson at least preserved an argument that waiver is procedural rather than substantive. Swanson quotes *Morgan* describing the Eighth Circuit's arbitration-specific waiver rule as procedural. [29] at 1–2. Indeed, *Morgan* describes the Eighth Circuit rule as "procedural" seven separate times. 142 S. Ct. at 1711–14. *Yakus v. United States*, 321 U.S. 414 (1944), called forfeiture (of which waiver is a variant) a "procedural principle," *id.* at 444. And waiver of a right to demand arbitration could well fall within *Byrd*'s definition of a procedural rule: one that is merely "a form and mode of enforcing" a substantive right. 356 U.S. at 536.

But for reasons explained above, the waiver rule is tied to Texas's substantive policy favoring arbitration. *E.g.*, *Perry Homes*, 258 S.W.3d at 590; *Kenny Hodges*, 433 S.W.3d at 543. And it is not a procedural rule of general applicability; it is tied to the specific substantive area of arbitration. *Perry Homes*, 258 S.W.3d at 593–95.

---

[5] *Compare, e.g.*, *Manning v. Hayes*, 212 F.3d 866, 871 (5th Cir. 2000) (ERISA); *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 759–63 (9th Cir. 1997) (federal rights generally); *Davis v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1396 (9th Cir. 1991) (federal constitutional rights); *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 429 (E.D. Pa. 2014) (federal discrimination claim); *Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320, 334 n.12 (E.D.N.Y. 2000) (FAA), *with Hollywood Fantasy Corp. v. Gabor*, 151 F.3d 203, 207 n.3 (5th Cir. 1998) (objection to enforcement of a contract); *Blue Cross of Idaho Health Serv., Inc. v. Atl. Mut. Ins. Co.*, 2011 WL 162283, at \*5, \*10–15 (D. Idaho Jan. 19, 2011) (whether insurer waived late notice as a defense).

[6] Because the court concludes that the waiver rule is substantive based on *Byrd* and *Herremans*, the court does not need to utilize the secondary, policy-based *Erie* analysis applied in more difficult cases. *E.g.*, *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 426–39 (1996); *County of Orange*, 784 F.3d at 528; *see generally* 19 Wright & Miller, *supra* § 4511.

11

### C. Southwest Did Not Waive Mandatory Arbitration

As discussed, the waiver standard in TAA cases has two prongs: (1) substantial invocation of the judicial process and (2) prejudice to the opposing party. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex. Ct. App. 1996). The court need not determine whether Southwest has substantially invoked the judicial process because Swanson has not shown that she was prejudiced.

#### 1. Prejudice

Swanson's briefing does not explain how or why she was prejudiced. Her response to the motion to compel arbitration, [26], did not address whether she was prejudiced by Southwest's late assertion of mandatory arbitration; she relied on *Morgan*'s holding that waiver of arbitration in federal FAA cases does not have a prejudice requirement, *id.* at 5–6. Swanson argued that going to arbitration as opposed to litigating the case here would prejudice her, [26] at 10–11, but that is not the correct inquiry. Under Texas law on waiver of arbitration, "prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004), *abrogated by Morgan*, 142 S. Ct. 1708).

The court gave Swanson another opportunity to brief the issue by asking, "[u]nder either [*Morgan* or *Perry Homes*] did Southwest actually waive arbitration through its litigation conduct in this case?" [28]. But Swanson's briefing in response to that prompt did not make any argument that she was prejudiced either; it merely rehashed previous arguments based on Southwest's alleged failure to follow the dictates of the ADR program. [29] at 7–10. Thus, Swanson likely forfeited an argument that Southwest's recent assertion of mandatory arbitration prejudiced her. *See Scheidler*, 914 F.3d at 540.

For completeness, however, the court also finds on the merits that nothing in the record suggests Swanson was prejudiced. Southwest has made no substantial motions and the parties have exchanged limited written discovery that, according to Southwest, will also be relevant in arbitration. *See* [27] at 4; [30] at 7. Swanson alleges no additional expenses that have been incurred because of the delay and no damage to her legal position that Southwest has caused by litigating the case until May 2022. Swanson has not shown that Southwest's conduct created "inherent unfairness." *Perry Homes*, 258 S.W.3d at 597 (quoting *Republic Ins. Co.*, 383 F.3d at 346).

12

### 2. Failing to Abide by ADR Program Procedures

Swanson spends significant time arguing that Southwest waived arbitration here by failing to abide by the procedures in the ADR program document, [20-2]. *See* [26] at 8–9; [29] at 7–10. Southwest responds only on the merits, arguing that Swanson—not the company—failed to abide by the ADR program's terms. [27] at 11–12. These arguments are beside the point. Swanson cites no case holding that a party moving to compel arbitration waives arbitration by failing to abide by the arbitration clause's procedures. Neither does she make any logical, policy, or practical argument that such a failure would waive reliance on the arbitration agreement. Thus, the argument is forfeited. *See Krebs v. Graveley*, 861 F. App'x 671, 673–74 (7th Cir. 2021) (order); *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988).

### CONCLUSION

The court holds four things. (1) The arbitration agreement is valid. (2) Swanson's claim falls within the scope of the arbitration agreement. (3) Waiver of the arbitration clause is substantive for *Erie* purposes because Texas's waiver rule is tied to the state's substantive policies favoring arbitration. (4) Southwest did not waive arbitration because Swanson has not shown that she was prejudiced by Southwest's delay in relying on the ADR program's mandatory arbitration clause. For those reasons, Southwest's motion to compel arbitration and stay the case, [20], is granted. Because of the stay, the court strikes Swanson's motion to strike and compel, [21], without prejudice to reinstatement pending the outcome of the arbitration.

Dated: August 26, 2023                    /s/ Martha M. Pacold

13